ORIGINAL

RECEIVED
SEP 18 2023
PRO SE OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

OWEN MARLON ALEXANDER

**AMENDED COMPLAINT**

**Plaintiff**

**JURY DEMAND**

v.

**CASE #: 1:23 – cv –05663 – PKC – RER**

ANDREEA GLEESON

TUNECORE INC.

DR. PHILLIP NICHOLS

NEW YORK CITY & THE DEPARTMENT OF HOMELESS SERVICES

THE OFFICE OF THE OMBUDSMAN

ARIEL VARGAS

ACACIA NETWORK

LYMARIS ALBORS

JASMILKA GONZALEZ

ASHELY MARRERO

HAMMOND JOHN

RENAINA THOMAS

CLARA GARCIA

BRENDA ROSEN

THOMAS WASHINGTON

FELICESADE BRANDT

DAVIDSON HEADLEY

KELLNER, HERLIHY, GETTY & FRIEDMAN, LLP

LYNN VAIRO

NATASHA PAYSON

KAREN MORALES

CHRISTOPHER WRAY

NEW YORK CITY & THE DEPARTMENT OF JUSTICE

MICHAEL WEISBERG

CHERY J. GONZALES

DEBRA KAPLAN

BRIAN M. COGAN

MONIQUE GUIRY

KATHY HOCHUL

THE ROMAN CATHOLIC CHURCH & THE VATICAN POPE SEE / SEA

ARCBISHOP CHRISTOPHE PIERRE, APOTOLIC NUNCIO

MERLYN CECILIA ALEXANDER

MEHBOOB AHEMED

**Defendants**

---------------------------------------------------------------X

Plaintiff, Owen Marlon Alexander, fields this amended pro se complaint with allegations are as follows:

## NATURE OF THE CASE

1. This is a copyright, unethical human experimentation, civil rights lawsuit, which airside from discrimination based on organized corruption within the judicial branch of government, the entertainment industry, housing industry, the mental and the medical health industry, with deliberate intentions to humiliate, emasculate, and even unalive the plaintiff. The plaintiff sex, race, religious belief and equal opportunity has been violated as a result of the defendants actions.

## JURISDICTION & VENUE

2. This court has jurisdiction pursuant to 28U.S.C. - 1331, 28U.S.C. - 1332, under the United States Constitution or, and federal laws. This court also has jurisdiction in pursuant under the federal constitution laws. (C.F.R.125.62); AND

(pub.L.No.94 - 553.90 stat.2541). This court's supplements jurisdiction over the claims brought under New York State and Federal law as invoked in pursuant to (15 U.S.C.1116(d)(2) through (11)); This court also has supplemental jurisdiction over the claims brought under New York State and Federal law as invoked in pursuant

to (15 U.S.C.1127); Sec.106A(a); Sec.602; Sec.411; Sec.111 and Sec.501 - 513. Title 17 Chapter 5.

3. In conjunction with New York State and Federal law, the United States District Court, Eastern District Of New York has jurisdiction in pursuant to (61stat.495) which under New York State and Federal law, jurisdiction is supplemented over pursuant to (P L 235 – 61 stat.496;504U.S.C.402); AND
(63 stat.579;50 U.S.C.401 et Seq).

4. Furthermore, in conjunction with the claims brought under Federal and New York State law which is invoked in pursuant to
(42 –t – 4084598 – 20081524F – 012 – 005 – 2016) AND ALSO
(42 – t – 40845958 – 20081524F – 011 – 014 – 2016).

5. Plaintiff also filed a claim with the United State Environmental Protection Agency on or around July 22nd, 2023, and is awaiting a right to sue letter.

## PARTIES TO THIS COMPLAINT

6. The plaintiff, Owen Marlon Alexander, is an individual which have been residing in the United States for over 30 years, and have never travel outside the United States.

7. The plaintiff is of mix race descendant who worked in the mental health field, with over five (5) years experience and in the Real Estate field.

8. The plaintiff is also a published copyright singer songwriter.

9. The plaintiff is skilled with a variety of working experiences, currently , and at all times , relevant, has maintained a New York State licensed as a Real Estate Broker, from February, 2004 to present.

10. The Plaintiff was evicted from his low income housing apartment at the Hegeman Avenue Housing complex scattered shelter site in August, 2022, because of an illegal evection with an Emergency Rental Assistance Program (ERAP) Application pending.

11. The Emergency Rental Assistance Program (ERAP) application number: AHVBK, was approved on or around June 22nd, 2023 and was denied on or around August 1st,2023.

12. Plaintiff was forced to relocate. In reentering to the New York City Shelter system, the plaintiff currently uses a United State Post office Box 1049, New York, New York, 10163 as his mailing address because of the issues the plaintiff is experiencing in the New York City shelter system now.

13. The defendant, Andreea Gleeson is the chief executive officer (CEO) of a musical digital distributing company that distributes mastered music recording via streaming online to streaming platforms. In pursuant to New York State law, defendant, Gleeson maintains and operates the day to day activates of the TuneCore company. Her main office is located at 63 Pearl Street, Box #256, Brooklyn, N.Y.11201.

14. Defendant, TuneCore INC. is a digital streaming musical distribution company that distributes recorded mastered music via streaming platforms. TuneCore INC. have a variety of other services such as collecting streaming publishing royalties,

digital mastering, and other services needed to promote a musical career. The headquarters of TuneCore INC. is located at 63 Pearl Street, Box # 256, Brooklyn, N.Y.11201, Their telephone number is 646 – 651 – 1060. Their email address is www.tunecore.com.

15. Defendant, Dr. Phillip Nichols is a recording producer, publisher, and engineer of recording musical instrumental and vocal sounds. Defendant, Dr. Phillip specializes in combining a variety of musical instruments sounds to manipulate a specific frequency that creates a unique musical sounds engineered to a perfection before mastering the musical production. His musical recording studio is located at 1600 Caton Avenue, #2A, Brooklyn, N.Y. 11226.

His telephone number is 718 – 469 – 3902.

16. The defendant, New York City & The Department of Homeless Services is a New York State public organization created in pursuant to New York State law operating, maintaining, and assisting the homeless community by providing homeless individuals, like myself, a safe, affordable housing. Their headquarters are currently located at 33 Beaver Street, 17th floor, New York, New York, 10004.

212 – 361 – 8000 is their telephone number.

17. The defendant, the Ombudsman office is a department of the New York City Homeless department created in pursuant to New York State law to operate, maintain, resolve issues and concerns, solving problems related to the health, safety, welfare, and the rights of individuals who live in long term care facilities and homeless scattered site shelters such as the shelter I am currently located at.

18. The Ombudsman office is located at 109 East 16th Street, 8th floor, New York, New York, 1003. The Ombudsman office headquarters are located at the department of Homeless Services which is located at 33 Beaver Street, 17th floor, New York, New York, 10004.

19. Defendant, Ariel Vargas is employed by the department of homeless services as the director of the Ombudsman office which is a department in the department of homeless services created in pursuant to New York State law to supervise, advise and trouble shoot a variety of issues a homeless individual may experience while residing with in a long term care facility or a homeless scatter site shelter facility.
20. The defendant, Ariel Vargas office is located at 109 East 16th Street, 8th floor, New York, New York 10004.

21. Furthermore, it is relevant at this time that the headquarters of defendant, Ariel Vargas is located within the department of the homeless services headquarters which is located at 33 Beaver Street, 17th floor, New York, New York, 10004.

22. The defendant, Acacia Network is a non profit organization which is employed by the department of homeless services to assist and supports individuals with learning disabilities, behavioral, mental and other medical health issues.

23. Defendant, Acacia Network created in pursuant to New York State law to operate and maintain long term living facilities and homeless scattered sites facilities, and their main office is located at 300 East 175th Street, Bronx, New York, 10457. The Telephone number is 718 – 299 – 1100, and the email address is www.acacianetwork.org

24. Defendant, Lymaris Albors is the chief executive officer (CEO) of Acacia Network, a non profit organization that assist and support individuals with learning disabilities, behavioral, mental, and other medical health issues.

25. Defendant, Lymaris Albors created pursuant to New York State law to operate and maintain long term living facilities and homeless scattered sites facilities.

26. Defendant, Lymaris Albors headquarters are located at 300 East 175th Street, Bronx, New York, 10457. Telephone 718 – 299 – 1100 and their email address is www.acacianetwork.org

27. Defendant, Jasmilka Gonzalez is a program director employed by Acacia Network which is a non profit organization that assist and supports individuals with learning disabilities, behavioral, mental, and other medical health issues.

28. The defendant, Jasmilka Gonzalez created pursuant to New York State law to operate and maintain long term living facilities and homeless scattered sites facilities.

29. The defendant, Jasmilka Gonzalez main office is located at 300 East 175th Street, Bronx, New York, 10457.

30. The defendant, Renaiya Thomas is the assistant director of social services employed by Acacia Network. A non profit organization that assist individuals with mental health, behavioral and other medical health issues within the homeless shelter system, and her main office is located at 300 East 175th Street, Bronx, New York, 10457.

31. The defendant, Ashely Marrero is a program Analyst that is employed by Acacia Network, a non profit organization that assist and support individuals with learning disabilities, mental health, and other medical health issues.

32. The defendant, Marrero created in pursuant to New York State law to operate, maintain, and assist in the day to day activities by assisting the program administrator.

33. Defendant, Ashely Marrero main office is located at the headquarters of Acacia Network, which is at 300 E. 175th Street, Bronx, New York, 10457.

34. The defendant, Hammond John is the program administrator employed by Acacia Network, a non profit organization.

35. Defendant Hammond John assist, and oversee the day to day activities of Acacia Network, then report to the chief executive officer, his main office is located at 300 E. 175th Street, Bronx, New York, 10457.

36. Defendant, Clara Garcia is a case manager employed by Acacia Network, a non profit organization that support and assist individuals within the Acacia shelter system, and her main office is located at 300 E. 175th Street Bronx, New York, 10457.

37. Defendant, Brenda E. Rosen is the chief executive officer (CEO) of Breaking Ground, a non profit organization that assist and provide affordable housing for individuals with low income, mental health, and other medical health issues.

38. In pursuant to New York State law, defendant, Rosen maintains and operates the day to day activities of the Breaking Gound non profit organization.

39. The Defendant, Rosen main office is located at the Breaking ground headquarters located at 505 8th Avenue, New York, New York, 10018.

40. Defendant, Thomas Washington is employed by Breaking Ground, a non profit organization that assist individuals and provides affordable housing for individuals with low income, medical, mental and other illnesses and health issues, and his main office is located at the Breaking Ground headquarters located at 505 8th Avenue, New York, New York, 10018.

41. Defendant, Felicesade Brandt is employed by Breaking Ground, a non profit organization that assist individuals with low income, and individuals with mental health and other medical health issues, her office is located at 505 8th Avenue, New York, New York, 10018.

42. Defendant, Kellner, Herlihy, Getty & Friedman, LLP is an attorney at law firm that practice law in pursuant to the New York State bar of law.

43. Defendant's headquarters is located at 470 Park Avenue, 7th floor North, New York, 10016.

44. Defendant, Lynn Vairo is the executive director that is employed by Program Developmental Services INC. which is a non profit organization that assist adults with learning disabilities, and her main office is located at 6908 Utrecht Avenue, Brooklyn, New York, 11228. Telephone Number 718 – 236 – 2226.

45. Defendant, Natasha Payson is employed by Program Developmental Services INC., a non profit organization that assist adults with learning disabilities as the director of operations, her office is located at 6908 Utrecht Avenue, Brooklyn, New York. 11228.

46. Defendant Karen Morales is employed by Program Developmental Services INC., a non profit organization that assist adults with learning disabilities as a direct care professional, and the main office of her place of employment is 6908 Utrecht Avenue, Brooklyn, New York, 11228.

47. Defendant, Christopher Wray is the director of the Federal Bureau of Investigation (FBI), and is employed by the United States Government.

48. In pursuant to the New York City law and Federal law, defendant Wray maintains, operates, and report to congress, as well as the joint chief of staff.

49. Defendant, Wray office is located at 26 Federal Plaza, 23rd floor, New York, New York, 10278, however, his headquarters is located at 935 Pennsylvania Avenue, NW, Washington D.C. 20535.

50. Defendant, New York City Department of Justice is employed by the judicial branch of the United States Government.

51. In pursuant to the New York State law, the New York City Department of Justice maintains and operates the New York City Courts.

52. Defendant, New York City Department of Justice headquarters is located at 86 Chambers Street, New York, New York,10007.

53. The defendant, Michael Weisberg is employed by the New York City Department of Justice as a Brooklyn Housing Court Judge.

54. In Pursuant of New York State law, defendant Weisberg is responsible for upholding the New York State Housing laws according to the New York State Bar and the department of justice.

55. The defendant, Weisberg place of business is located at 141 Livingston Street, Brooklyn, New York, 11201, however, defendant, Weisberg headquarters is located at the Department of Justice office, 500 Pearl Street, New York, New York, 10007.

56. Defendant, Chery J. Gonzales is employed by the New York State Department of Justice as the Chief Housing Court Judge.

57. In pursuant of New York State law, defendant, Gonzales is responsible for upholding the New York State law according to the New York State bar of law and the department of Justice, her place of business is located at 141 Livingston Street, Brooklyn, New York,11201, however, defendant, Gonzales headquarters is located at the Department Justice office located at 500 Pearl Street, New York, New York, 10007.

58. Defendant, Debra Kaplan is employed by the New York State Department of justice as the deputy chief administrative judge.

59. In Pursuant of New York State law, defendant, Kaplan is responsible for upholding the New York State Housing laws according to the New York State Bar and the department of Justice.

60. Defendant, Kaplan place of business is located at the Department of justice located at The Daniel Patrick Moynihan United States Court House, 500 Pearl Street, New York, New York, 10007. Telephone #: 212 – 805 – 0104 : Deputy / 212 – 805 – 0216 : Chambers.

61. Defendant, Brian M. Cogan is employed by the United States Eastern District Court as a Federal Judge.

62. In pursuant of New York State and Federal law, defendant Cogan is responsible for upholding the law according to the Federal constitutional law. Defendant Cogan place of business is located at 225 Cadman Plaza East, Brooklyn, New York, 11201, defendant Cogan's main headquarters is located at Daniel Patrick Moynihan United States Court House, 500 Pearl Street, New York, 10007.

63. Defendant, Monique Guidry is employed by the Governor's office, a representatives of the Governor of New York State.

64. Defendant Guidry office is located at 633 3rd Avenue, 38th Floor, New York, New York, 10017, and the defendant's Guidry telephone number is 212 – 681 – 4580 .

65. Defendant, Kathy Hochul is currently the governor of New York State.

66. In pursuant of New York State law, defendant, Hochul duties are to enforce State law, approve or veto bills pass by the New York State Legislature, grant pardons, except, in cases of treason and impeachment.

67. The Defendant, Kathy Hochul business office is located 633 3rd Ave. 38th floor, New York, New York, 10017. however, defendant, Hochul headquarters is located at New York State Capital Building, Albany, New York 12224

68. The defendant, the Roman Catholic Church & The Vatican Pope Sea/see is the executive order of the Catholic Christian faith.

69. The defendant, the Roman Catholic Church & the Vatican Pope See /Sea, is incorporated under the laws of the State of Washington, D.C., New York State and has its principal place of business in the State of Washington D.C.

70. The defendant, The Roman Catholic Church & The Vatican Pope See /sea headquarters is incorporated under the laws of the Bishopric of Rome, Holy See / Sea, the Roman Curia, Vatican City, Italy, and has its principal place of business in the Bishopric of Rome Holy see, the Roman Curia, Vatican City, Italy, its United States headquarters is located at 333 Massachusetts Avenue, N. W. Washington, D. C. 20008.

71. The Defendant, Christophe Pierre is employed by the Roman Catholic Church & The Vatican Pope Sea/ see as the Archbishop Apostolic Nuncio and is incorporated under the laws of the state of Washington D.C., New York State, with its principal place of business in the state of Washington, D. C.

72. The defendant, Christophe Pierre's headquarters is incorporated under the laws of the Bishopric of Rome, Holy See/Sea. The Roman Curia, Vatican City, Italy, and has its principal place of business in the Bishopric of Rome Holy see, the Roman Curia, Vatican City, Italy. Its United States headquarters is located 333 Massachusetts Avenue, N.W. Washington, D.C. 20008.

73. The defendant, Merlyn Cecilia Alexander is the mother of the Plaintiff who is responsible for bringing the plaintiff into the United States.

74. Defendant, Merlyn Alexander last known is, 260 Welcome Street, Fall River, M.A 02721.

75. Defendant, Mehboob Ahemed was employed as a doctor of medicine, and also employed by the department of Justice as a judge. His last know place of address was 3701 Nautilus Avenue, Brooklyn, N.Y. 11224.

## STATEMENT OF CLAIM

76. Plaintiff is, and at all relevant times, have been a resident of the United States for over 30 years and have never traveled outside the United States.

77. The plaintiff is skilled with a variety of working experiences and currently maintains a New York State Real Estate Broker's License, from February, 2004 to present time.

78. The plaintiff is also a copyright singer song writer with written materials registered with the library of congress. (15U.C.S1127)

79. The plaintiff recorded his first single at Dr. Phillip Nichols recording studio in December, 2021, and was mastered by Mr. Chris Scott in January, 2022. ( Pub. L. No.94 - 553.90 stat. 2541).

80. The plaintiff began doing business with TuneCore Inc. Distrubutions in February, 2022. (15U.S.C. 1116 (d)(2) through (11))

81. In plaintiff doing his best to take the mystery out social media, plaintiff began having issues with TuneCore Social, in March 2022 after uploading his mastered recording to TuneCore Inc.

82. Plaintiff did his best to resolve the issues he was experiencing with TuneCore, and was told by a representative that TuneCore was experiencing a lot of technical issues and bugs, and most lightly, the plaintiff was not doing anything wrong, however, based on what the plaintiff was told by the representative, the plaintiff was experiencing a bug on the website.

83. In doing plaintiff's best to find alternatives to the issues the plaintiff was experiencing, the plaintiff was told that there were no alternatives to resolving the issues the plaintiff was experiencing at that time.

(15U.S.C.1127) Sec.106 A(a); Sec602; Sec.411, Sec.111 and Sec. 501 – 513.

84. The plaintiff was invited to a TuneCore ask me anything mixer located at 198 N. 4th Street, Brooklyn, N.Y. on or around July 20th, 2022.

85. The plaintiff meet the chief executive officer, (CEO), Andreea Gleeson at the ask me anything mixer, and had a brief meeting of the minds to expressed his grievances.

86. After exchanging Instagram information, and taking photos with defendant, Ms. Gleeson, the plaintiff was told that defendant Gleeson would get back to the plaintiff, however, defendant Gleeson never did.

87. Plaintiff uploaded his music on feature.fm and radio airplay, two (2) radio stations that streams music as a part of TuneCore services promotions and was unable to continue using the services as a result of being shadow band from feature.fm and radio airplay.

88. In April, 2023, TuneCore took down the plaintiffs music from the streaming platforms that they use to service individuals that stream music on line.

89. After months of the plaintiff's doing his best to resolve the issues he was experiencing and promote his single, the plaintiff reached out to volunteer lawyers for the arts in March, 2023, and in June, 2023, the plaintiff was told by the Volunteer lawyers for the arts that they were unable to assist the plaintiff in this matter.

90. Plaintiff began getting trolled and bullied by other artists he meet at the TuneCore mixture via social media on Instagram, and other social media platform that uses TuneCore to promote their music platform.

91. The Plaintiff decided to stay off social media to avoid any conflict with other TuneCore members.

92. Plaintiff was unable to promote and collect any royalties from his music due to the virtue that he had issues with his TuneCore streaming platform, and was shadow banned, from the musical platform, meanwhile, TuneCore was withdrawing their monthly services fees from plaintiff's debit account.

93. Plaintiff was forced to cancel his debit card account to avoid charges for services that were not rendered.

94. The emotional stresses of not being able to promote the plaintiff musical career was devastating, and indeed, a learning experience while going through an eviction process. (63 stat. 579; 50 U.S.C. 401 et seq)

95. Defendant, Dr. Phillip Nichols is a doctor of music production who attained his doctorate in England.

96. Defendant, Dr. Nichols is skilled in recording musical instruments sounds and vocal sounds by manipulating sounds to a specific frequency (440Hz) to a perfection before mastering.

97. Plaintiff did his first recording in December, 2022 at Dr. Phillip recording studio by recording his vocals and a unique way in playing the acoustic guitar.

98. After a few sessions of recording, Dr. Phillip decided to add musical instruments to the acoustic guitar sound to manipulate and enhance the acoustic guitar and vocal sounds.

99. In January of 2022, the production was taken to the studio of Mr. Chris Scott recording studio for mastering musical and vocal sounds, and was mastered in February, 2022.

100. After listening to the mastered production, the plaintiff cried due to the virtue of the great quality of the production and successfully executive producing his first single. It was at that time the plaintiff decided to use TuneCore INC. as his independent distribution company.

101. When the single was uploaded to TuneCore distribution, the plaintiff informed Dr. Phillip about his housing issues and was introduced to a human rights activist, Marcus Bruchell. The plaintiff had a conference call with Mr. Bruchell.

102. During the conversation Mr. Bruchell stated that he had meetings with the staff and the tenants of the Hegeman, to discuss creating a tenant's association board and was unsuccessful due to the conflict of interest with the Hegeman staff members.

103. Mr. Bruchell then asked plaintiff for any personal information he was willing to give regarding his situation in order for him to advocate on the plaintiff behalf.

104. In March, 2022 the plaintiff submitted the information as requested by Mr. Bruchell only to be told that Mr. Bruchell was unable to assist the plaintiff in this matter, and the plaintiff should consider looking for work in another field other than the music industry. (61stat.495).

105. The plaintiff, was evicted in August, 2022, from The Hegeman, a scattered site shelter, the Hegeman, which is an entity of Breaking Ground.

106. The plaintiff was forced to reenter the shelter system in August,2022. Plaintiff entered the Department of Homeless Diversion, located at 400 – 430 E. 30th Street, New York, New York, 10016, on or around August 18th, 2022.

107. Due to the high volume of immigrants entering into the New York City Shelter system, plaintiff was transferred to the Super 8 Shelter on or around August 22nd, 2022, and was registered into the Acacia Network system on or around August 26th,2022.

108. Upon registering with Acacia Network, Plaintiff asked Ms. Angela Grandberry, the director of social services why they needed the plaintiff birth certificate and social security, and defendant Grandberry replied, "If you don't give us the information we request, you can't stay here... so give us the information if you have it or leave."

109. After plaintiff submitted the information as requested, the plaintiff asked Ms. Grandbery if Acacia Network was a non profit organization, the defendant replied, yes.

110. It was at that time the plaintiff realized that something was wrong and starting having issues with the room mate in 302.

111. At plaintiff first ILP meeting with case manager, defendant Clara Garcia, defendant Garcia stated that the location I am currently located at would be my new permanent address and was given a letter to give to HRA to open a public assistance case (PA).

112. The plaintiff got offended by defendant Garcia remarks.

113. Based on what defendant Garcia told the plaintiff, the DHS system stated that the reason for the plaintiff eviction was a non payment eviction.

114. The plaintiff corrected defendant Garcia by notifying her that the plaintiff evection was a HOLDOVER case not a non payment case.

115. When the plaintiff requested proof of the non payment statement, the defendant, Ms. Garcia denied the plaintiff the information.

116. Most of defendant Garcia's statements were faults and most of the time defendant Garcia was always aggressive towards the plaintiff.

117. The plaintiff even complaint to Council member Rafael Salamanca, JR. Office in January, 2023.

118. In following up with Council member Rafael office, the representative stated that based on the investigation they did, the plaintiff was non- compliant to the requirements of the defendant Acacia Network.

119. At one point in time, defendant Garcia demanded that plaintiff meet with her to do the Independent Living Plan, (ILP) and stated that she did not care what the plaintiff had to do, the plaintiff must meet with defendant Garcia.

120. In meeting with plaintiff Garcia for ILP's, defendant Garcia always stated that there was an issue with the plaintiff public assistance (PA) case, and she had no idea how to rectify the situation, so the plaintiff refused to endorse the ILP statement when the defendant asked to meet because the plaintiff was not getting the services the plaintiff needed from defendant Garcia and the staff members

except for being bullied, lied too and manipulated into thinking something was wrong with the plaintiff because the plaintiff would not endorse the ILP statement. (PL 235 – 61 Stat. 496;50 U.S.C.402)

121. On or around August 30th,2022, the plaintiff went to the ombudsman office to file a constituent grievance, and again on or around September 1st,2022, the defendant went to the ombudsman office to file a complaint for a reasonable accommodation request and was denied due to the virtue that the plaintiff did not have a medical statement from the plaintiff physician.

122. Again, on or around September 3rd,2022, the plaintiff had an argument with the roommate and was asked to write a statement and was transferred to another room, room 509.

123. The plaintiff got a doctors note and did not submit the doctor's note due to the virtue that the plaintiff realized that there was a possibility that the defendants at Acacia Network may use it against the plaintiff, due to the virtue that it seemed like the staff at Acacia Network would weaponize the plaintiff words against the plaintiff by manipulating the plaintiff statement.

124. On or around September 7th, 2022, the plaintiff meet with the defendant, director Ariel Vargas and on all previous meetings at the ombudsman office, the plaintiff meet with the defendant Ariel Vargas.

125. The plaintiff filed another reasonable accommodation request due to the virtue the plaintiff was constantly being bullied by the Acacia Network staff and stocked by gang members residing in the shelter facility.

126. On or around October 4th, 2022, October 7th, 2022, and again on October, 26th,2022, the plaintiff had meetings with defendant Vargas requesting information on what the plaintiff should do about the situation the plaintiff is experiencing.

127. Defendant, Vargas suggested that the plaintiff complaint to the headquarters of the department of homeless services located at 33 Beaver Street, 17th floor.

128. In the attempt to make a complaint to the headquarters of the department of homeless services, the plaintiff was told by the lobby security that all complaints are matters of the ombudsman office.

129. On or around December 8th, 2022, the plaintiff meet with defendant Vargas to inform him about the plaintiff findings.

130. The plaintiff also informed defendant Vargas that his ancestors were instrumental in the fight for the United States independence and also converting the bible from Portuguese to English.

131. In December, 2022 defendant Grandberry went out on a sick leave sabbatical, and return in June, 2023.

132. Defendant Renaiya Thomas was now in charge of the social service and the director of operations at the facility.

133. Plaintiff notified defendant Renaiya Thomas that the plaintiff is a published song writer, while at that time doing his best to promote his new single, and needed his guitar to promote the plaintiff music.

134. Defendant, Thomas notified the plaintiff, that the plaintiff and his guitar is considered a weapon and the plaintiff could not have the guitar in facility, however,

the plaintiff informed defendant Thomas that the guitar was with him at the homeless shelter on E. 30th, Street, and the plaintiff had no place to put the guitar.

135. In compromising, defendant Thomas allowed the plaintiff to keep the guitar in his locker providing that he do not disturb his roommate whenever the plaintiff is playing his guitar.

136. In June, 2023, the plaintiff was playing his guitar when he started laughing and said, "he would be as bad as he could be in a good way", which upset his roommate .

137. The defendant Thomas ask that the plaintiff give her the guitar and leave it downstairs with the operations department.

138. The plaintiff would be allowed to leave the building and bring the guitar back into the facility providing that he leave it with staff.

139. The plaintiff ask the defendant for a statement in writing, which the defendant Thomas decline to write, therefore the plaintiff did not surrendered the guitar at that time, this have been going on for almost a year.

140. For some reason it seems like if you do not speak Spanish, or you are not an immigrant, the staff members of Acacia is not willing to assist you in any way.

141. The plaintiff requested a meeting of the minds with defendant Hammond John in January,2023, and was denied by defendant Ashely Marrero.

142. As a result of the plaintiff traumatizing experiences in the shelter system for over 9 years the plaintiff decided to submit this case due to the virtue that defendants Lymaris Albors, Jasmilka Gonzalez, who told me that the plaintiff did

not have a birth certificate, Hammond John, Angela Grandberry, Renaiya Thomas, Clara Garcia, and the other staff members of Acacia Network, are all aware of the emotional abuse the plaintiff is experiencing, and at times reward individuals that could trigger the plaintiff to have a negative reaction to their emotional abusive tactics.

143. At one point in time the plaintiff was told by a security guard that the plaintiff was cloned and there is someone out there in the world living the plaintiff's life while the plaintiff is in the shelter system.

144. Every time the plaintiff do his best to speak out on the events the have experienced, the plaintiff gets censored.

(42 – t – 4084598 – 20081524F – 012 – 005 – 2016) AND

(42 –t – 40845958 – 20081524F –011 – 014 – 2016).

## AS AND FOR A FIRST CAUSE OF ACTION

145. The allegations contained in paragraphs 1 – 144 are incorporated by reference as though fully set forth herein.

146. The defendants mention in paragraph 1 – 144 all collaborated with high officials within the department of homeless services, the entertainment industry, and the Real Estate industry by manipulating the system. (CIA v. SIMS,417 U.S.159)

147. The plaintiff was advised by the Federal Pro Se Legal Assistance Project team, not to mention Breaking Ground or Program Development Services INC. in the amended case, however, they were all instrumental in bring the plaintiff to this point in the plaintiff life.

148. The plaintiff became employed by Program Development Services INC. for over five years in an environment where more females than mails and the females were always the aggressor.

149. When the plaintiff became a citizen of the United States of America, the plaintiff was swan in as a nationalized citizen in the United State District of New York building.

150. Now the plaintiff find himself asking himself if becoming citizen of the United States was the right thing to do because of all the emotional abuse the plaintiff have been experiencing from not only society, however, his own family, and so called friends.

151. The plaintiff, worked hard to studied the constitution, fulfilled all the necessary requirements to become a citizen, and because the plaintiff educated himself in the Real Estate field, maintained a Real Estate Licensed for over 18 years, and is a songwriter with registered material with the library of Congress, he is being taken advantage off.

## AS FOR SECOND CAUSE OF ACTION

152. The allegation contained in paragraphs 1 – 151 are incorporated by referenced as though fully set forth herein.

153. Defendant, Brenda E. Rosen, the chief executive officer of Breaking Ground, who employed defendant, Thomas Washington to appear in the Brooklyn Housing Court to commit perjury against the plaintiff, after filing an illegal holdover housing court case, after terminating the defendant, Davidson Headley before the court date.

154. Defendant Headley was instrumental in collaborated with Felicesade Brandt, Brenda Rosen, members of Center for Urban Community Services (CUCS), and other tenants, by lying to the plaintiff and using manipulative tactics to make the plaintiff feel the plaintiff had a mental health problem. (61Stat.495)

155. By using word of mouth, and social media, defendant Thomas Washington went around the community telling everyone that the plaintiff was doing his best to overthrow the Roman Catholic Church, when the issues I have been experiencing is because of the individuals in the church, not the church.

1:18 – cv – 01433 – BMC – RER & 1:20 – cv – 05114 – BMC – RER .

**AS FOR A SECOND CAUSE OF ACTION**

156. The allegations contained in paragraph 1 – 155 are incorporated by reference as thought fully set forth herein.

157. Defendant Kellner, Herlihy, Getty, & Friedman, LLP was employed by defendant Brenda Rosen to manipulate the Brooklyn Housing Court system, and the Judicial system by falsifying evidence and weaponizing the justice system to bully the plaintiff.

158. Plaintiff Rosen was once employed as an attorney by the Brooklyn Housing Court system and uses the justice system to manipulate individuals.

159. On one occasion the plaintiff had a court appearance and was not notified by Brooklyn Housing Court, which was orchestrated by the defendant, Kellner, Herlihy, Getty, & Friedman, LLP, and plaintiff Brenda Rosen. (LT –073269 – 19/ KI) 06/21/2022.

160. Case LT – 073269 – 19/KI was adjourned on 7 occasions and was rescheduled on 8 occasion on defendant Brenda Rosen behalf.

161. Plaintiff applied for an Emergency Rental Assistance Program, (ERAP) which should have prevented the plaintiff from being evicted, however, the plaintiff was still evicted.

162. ERAP application #: AHVBK was approved on or around June, 22nd, 2023, and was denied in August, 2023.

**AS FOR A THIRD CAUSE OF ACTION**

163. The allegation contained in 1 – 162 are incorporated by reference as though fully set forth herein.

164. The plaintiff was employed by the defendant Lynn Vario, of Program Development Services INC. when the plaintiff was psychologically manipulated and forced to perform oral sex on defendant Karen Morales on more than one occasion. (61stat.495)

165. When the plaintiff complained, the plaintiff was fired by defendant Natasha Payson. As a results of the defendant actions the plaintiff became ill.

166. In May, 2018, the plaintiff had colonoscopy examination at the Brookdale medical center, when a nurse told the plaintiff that he was related too the plaintiff and the plaintiff had a relative with the same name as the plaintiff.

(42 –t – 4084598 – 20081524F – 012 – 005 – 2016) AND

(42 – t – 40845958 – 20081524F – 011 – 014 – 2016).

167. In June, 2018, the plaintiff had colon and Rectal surgery at Weill Cornell Medicine, performed by Parul Jaikrishana Shukla, MD.

168. Plaintiff recovered from colon surgery and have been doing his best to continue improve the quality of his life.

## AS FOR A FOURTH CAUSE OF ACTION

169. The allegation contained in paragraphs 1 – 168 are incorporated by reference as though fully set forth herein.

170. In November, 1994, the plaintiff suffered a gun shot wound in North Carolina and was taken to the Durham General Hospital.

171. While in the hospital, the plaintiff was given one (1) of three (3) drugs to tell the truth. Sodium Amytal, Sodium Pentothal, Sodium Thiopental. These drugs are called TRUTH SERUM. (61 stat.495)

172. Due to the virtue that the left Tibula was not healing properly, the plaintiff decided to returned to New York City for medical treatment.

173. The plaintiff was admitted to the Coney Island Hospital in February, 1995, where a post external fixture with pins was fixated to the left Tibula,(left leg) by Dr. C. Dharapak, MD, and Dr. M. Silver, MD.

174. The plaintiff was discharged from Cony Island Hospital on or around February, 6th, 1995.

175. On April 13th,1995, the plaintiff was readmitted to the Coney Island Hospital after being abused and was forced to read the bible by defendant Merlyn C. Alexander.

176. In May, 2017, the plaintiff requested his medical records from the Coney Island Hospital and was approached by a clergy member of the Roman Catholic Church.

177. The Roman Catholic Clergy ask the plaintiff if the plaintiff spend any time at the Coney Island Hospital, and made the sign of the cross, then told the plaintiff to wait until he return, however, the clergy member never returned. The plaintiff was future faked by the member of the Roman Catholic Clergy which is a form of narcissistic abuse . (PL 235 –61 stat.496;50 U.S.C.402)

178. In May of 2020, the plaintiff wrote to Pope Francis of the Vatican pope see/sea regarding his various concerns, including the narcissistic abuse the plaintiff was experiencing with Breaking Ground, friends, and family.

179. In June, 2020, the plaintiff Archbishop Christophe Pierre replied to the plaintiff stating that the Holy father was powerless to assist the plaintiff in the matters the plaintiff was experiencing, and prayed that the plaintiff's concerns be resolved.

180. Again, January, 2023, the plaintiff wrote to Archbishop Christophe Pierre, regarding the class action case the plaintiff was a part of with Betty Rhodes v. Program Development Services INC, along with other issues the plaintiff have been experiencing, however, the defendant Pierre, did not respond to the plaintiff letter. (61 stat.495)

181. The plaintiff received a settlement of $79.67, of which $31.29 was withheld for tax purposes, leaving the plaintiff with $48.38. If this is not a case of bread crumbing, what is?

**AS FOR A FIFTH CAUSE OF ACTION**

182. The allegations contained in paragraphs 1 – 181 are incorporated by reference as though fully set forth herein.

183. The plaintiff did his best to notify the Bureau of Investigation on several occasions of his suspicions of unethical behavior, and suspicions of illegal activities within the Breaking Ground organization, by writing to the defendant Christopher Wray, in December, 2021, at his Manhatton office, located at 26 Federal Plaza, 23rd floor, N. Y. N.Y. 10278. However, the defendant Wray, neglected to respond to the plaintiff's allegations. (61stat.495), in pursuant to the National Security Act of 1947. & (63 stat. 579; 50 U.S.C. 401 et seq.).

## AS FOR A SIXTH CAUSE OF ACTION

184. The allegations contained in paragraphs 1 – 183 are incorporated by reference as though fully set forth herein.

185. Defendants, Michael Weisberg, and Chery J. Gonzales, weaponized the New York State Justice system against the plaintiff by manipulating the justice system to their advantage on behalf of defendants Kellner, Herlihy, Getty & Friedman LLP , Thomas Washington, and Brenda Rosen favor.

186. The plaintiff did not have an attorney at trial during the Breaking Ground housing case, ( LT – 073269 – 19/KI,) and by allowing defendants Kellner, Herlihy, Getty, & Friedman LLP, Thomas Washington, and Brenda Rosen to adjourned , and at times reschedule the case on their behalf was unethical, and therefore, violated the plaintiff 5th, 6th, and 7th Amendments. Also see (PL 235 – 61stat.496;50U.S.C.402) & (42 – t – 4084598 – 20081524F – 012 – 005 – 2016).

## AS FOR A SEVENTH CAUSE OF ACTION

187. The allegations contained in paragraphs 1 – 186 are incorporated by reference by as thought fully set forth herein.

188. Defendants Debra Kaplan collaborated with defendant Chery Gonzales, defendant Kellner, Herlihy, Getty & Friedman LLP, defendant Brenda Rosen, and Thomas Washington, to manipulate the justice system in order to prevent the plaintiff from improving the quality of the plaintiff life by falsifying evidence, employing individuals to lie, spy, troll, bully, hacking the plaintiff computer IP addresses, cell phone communication devices, social media and by manipulate the plaintiff into thinking he had a mental health issue. (61 stat. 495)

189. The plaintiff mailed paperwork to defendant Kathy Hochul office, in November, 2021, and was told by a representative, they will conduct an investigation based on the plaintiff's grievances.

190. After two (2) months of following up with the defendant Hochul's office, the plaintiff was directed to contact the DCAJ office of defendant Debra Kaplan by a representative of defendant Kathy Hochul office in January, 2022, regarding the plaintiff housing case LT – 073269 – 19 KI after the plaintiff was unable to attain a fair trial at the Brooklyn Housing Court as a result of the manipulation done during the trial by defendants Kellner, Herlihy, Getty & Friedman, LLP, Thomas Washington, and Michael Weisberg. (63 stat.579;50 U.S.C. 401 et seq.)

191. After months of following up with defendant Kathy Hochul office, the plaintiff was instructed to contact a representative of defendant Hochul office, defendant Monique Guiry, in November, 2022, who was unable to assist the plaintiff after the

plaintiff notified defendant Monique Guidry that the plaintiff was illegally evicted from the plaintiff low income apartment.

## AS FOR A EIGHTH CAUSE OF ACTION

192. The allegations contained in paragraphs 1 – 191 are incorporated by reference as though fully set forth herein.

193. The defendant, the Roman Catholic Church employed an individual who identified himself as a Roman Catholic Church clergy member, intercepted the plaintiff entering the Coney Island Hospital while attempting to attain the plaintiff medical records in May, 2017.

194. The individual, who was a representative of the defendant, the Roman Catholic Church, asked the plaintiff a series of questions and went on to make the sign of the cross over the plaintiff, instructed the plaintiff to wait until he return, however, the representative of the Roman Catholic Church never returned.

195. The plaintiff renounced all religion and is now living a life of spirituality.

196. The defendant, Christophe Pierre is considered as the chief spiritual advisor of the Roman Catholic Church, who failed to respond to the plaintiff request after the plaintiff notified defendant Pierre, that it is possible that he is a descendant of William Alexander, 1st Earl of Stirling, who was a poet and writer that received the place of Gentleman Usher to Prince Charles, son of James the 1st of England (James 6th of Scotland), in 1603, and also assisted King James 1st and the 6th in preparing the metrical version known as "The Psalms of King David, translated form Portuguese to English by King James" authority of Charles 1st , who was an active freemason, and also William Alexander, Lord Stirling, who was a Scottish –

American major general during the American Revolutionary War, and was considered male heir to the Scottish title of Earl of Stirling through Scottish lineage (being the Senior male descendant of the paternal grandfather of the 1st Earl of Stirling.

## AS FOR A NINTH CAUSE OF ACTION

197. The allegations contained in paragraph 1 – 196 are incorporated by reference as through fully set forth herein.

198. The defendant, Merlyn Cecilia Alexander is the mother the plaintiff, who brought the plaintiff to the United States in December, 1988.

199. In May 1993, the defendant took out a life insurance policy on the plaintiff after hearing a musical recording of the plaintiff singing on the radio, with the intention that the plaintiff would become a statistic of the "Crack Cocaine Pandemic in the early 1990's.

200. After returning from North Carolina with a broken tibula (left leg), in February, 1995, the plaintiff was forced to be baptized, after receiving medical attention, at the Coney Island Hospital, then was physically abused, and was forced to read scriptures from the bible which created a spiritual awakening.

201. The plaintiff then was taken to the Coney Island hospital where he was forced to endorse paperwork. (61 stat.495)

202. The defendant Merlyn Alexander's mother, left the defendant as Guardian over an inherited estate in Trinidad for the plaintiff, and stole the plaintiff inheritance by forging documents and telling the plaintiff lies.

203. The defendant, Merlyn Alexander abusive behavior caused a variety of trauma to the plaintiff and personal setbacks.

## AS FOR A FIFTH CAUSE OF ACTION

204. The allegations contained in paragraphs 1 – 203 are incorporated by reference as though fully set forth herein.

205. The defendant Mehboob Ahemed was the owner of property located at 3701 Nautilus Avenue, Brooklyn, N.Y. 11224.

206. The plaintiff was employed by defendant Mehboob Ahemed to assist him in renovating the property mentioned in paragraph 205.

207. The plaintiff also assist the defendant Mehboob in an eviction and was not compensated for his service.

208. The defendant, Mehboob Ahemed became ill and informed the plaintiff that he purchased property upstate New York on his behalf.

209. The defendant, Mehboob Ahemed informed the plaintiff that a judge will award him the property located in the county of Wyoming, town of Gainesville, lot 59, township 8, range # 1 of the Holland land company, however, the property was awarded to Musarrat S. Ahmed – Dugan.

210. Plaintiff is aware that in the event of the passing of an individual, the individual's properties, and death goes to the next of keen, if not mentioned in a finial will and testimony.

## DAMAGES

211. As a result of all the defendants mention in this case actions against the plaintiff, Owen Marlon Alexander have suffered tremendous losses and benefits.

212. As a consequence of all the defendants actions, the plaintiff suffered a loss of reputation, humiliation, and embarrassment.

213. The plaintiff have suffered severe emotional distress as a direct and proximate result of all the defendants in this case aforedescribed action.

214. The plaintiff's ability to advance his musical and Real Estate career has been severely undercut, causing extreme hardship in doing his best to obtain any form of gainful employment, as a direct result of all the defendants mentioned in this case aforedescribed actions.

215. Due to the virtue of all the defendants actions, as well as their agents, and the involvement of higher officials, they all acted recklessly, maliciously, deliberately and with no remorse for human life, entitling the plaintiff to an award of damages.

## RELIEF

WHEREFOR, plaintiff is asking the court's that judgment to be entered:

1. Ordering that all defendants involved to give the plaintiff a public apology.

2. Awarding plaintiff presidential protection, orders of protections against family members and acquaintances, back ground checks on all individuals the plaintiff

intends to do business with, thus, preventing the plaintiff from getting involve with any affiliations of organized crime, disclosures making private meetings with the plaintiff private, unannounced to the public that will prevent the plaintiff from being sued, as well as all lost benefits.

3. Awarding plaintiff any, and all additional statutory, and punitive damages available under New York State, and Federal Law.

4. Awarding plaintiff emotional distress damages in the sum of $ 30 Billion or tender in value of gold, silver, land / housing, and any other lawful legal tender that will satisfied as compensation for the plaintiff physical, spiritual, and emotional pain and suffering.

5. Awarding plaintiff $ 30 Billion or tender in value of gold, silver, land / housing, and any other lawful legal tender that will satisfied as compensation for his loss of reputation, humiliation, and embarrassment.

6. Awarding plaintiff the ability to record, produce, and perform his musical recordings in 432Hz, 417Hz, and 440Hz frequencies, the ability to work with other musical artist, producers, and players of musical instruments, with the ability to participate in benefit concerts for charitable causes, as well as live touring thought out the United States and the world, with distribution of the plaintiff music through out the world, practice buying and selling Real Estate property as a licensed Real Estate Broker, and assistance in creating a privatized enterprise.

7. Awarding the plaintiff to practice his own formation of his spirituality and share his spirituality to anyone and everyone that needs the plaintiff assistance in spirituality.

8. Awarding the plaintiff a meeting with the Vice president and the president of the United States as well as other world leaders and delicates, including the Holy father, Pope Francis.

9. If it pleases the court, the plaintiff would like to assist individuals that needs assistance in attaining their alien residency and individuals who wish to attain nationalized citizenship.

10. Granting such other and further relief as is just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

Dated:

Signature of Plaintiff: Owen Marlon Alexander

Printed Name of Plaintiff: OWEN MARLON ALEXANDER

By: Owen Marlon Alexander

09/18/2023

PATRICK A ONAPHIE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ON5078990
Qualified in Bronx County 2027
My Commission Expires June 02, ~~2023~~

Owen Marlon Alexander
P.O. Box 1049
New York, N.Y.10163
347 –785 - 7015
Owenalexander47@outlook.com